**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**KAREN D. BAXTER,**

                              **Plaintiff,**

                       **v.**                                   **5:05-CV-716**
                                                                      **(FJS/GHL)**

**J.C. PENNEY, CORPORATION, INC.,**

                              **Defendant.**
_____

**APPEARANCES**                                        **OF COUNSEL**

**KAREN D. BAXTER**
Syracuse, New York 13224
Plaintiff *pro se*

**J.C. PENNEY CORPORATION, INC.**          **NICHOLAS A. O'KELLEY, ESQ.**
6501 Legacy Drive (MS-1122)
Plano, Texas 75024
Attorneys for Defendant

**HODGSON RUSS LLP**                            **PAUL I. PERLMAN, ESQ.**
The Guaranty Building
140 Pearl Street
Suite 100
Buffalo, New York 14202-4040
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff Karen D. Baxter filed this complaint asserting employment discrimination on the basis of race and retaliation claims under Title VII and state-law claims for intentional infliction of emotional distress and defamation against her employer, Defendant J.C. Penney Corporation,

based on Defendant's termination of her employment.  Currently before the Court is Defendant's motion for summary judgment on the basis of the preclusive effect of prior administrative proceedings and the lack of merit of Plaintiff's Title VII claims.

## II.  BACKGROUND

Cristeen Sabin, the salon manager for J.C. Penney's Shopping Town Mall salon, hired Plaintiff as a hairdresser on August 16, 2001.  Defendant terminated Plaintiff's employment following an incident on May 29, 2004.  Plaintiff then filed for unemployment and filed a charge with the New York State Division of Human Rights ("NYSDHR").  The New York Unemployment Insurance Appeal Board denied Baxter's claim for unemployment on October 12, 2004, finding she was terminated for misconduct.  The NYSDHR dismissed Plaintiff's claim with a finding of no probable cause.

## III.  DISCUSSION

### A.    The preclusive effect of prior administrative determinations

Defendant contends that the NYSDHR and unemployment decisions mean Plaintiff must show new facts or show that these proceedings were not impartial to overcome the highly probative finding that her termination was not due to discriminatory intent.  *See* Defendant's Memorandum of Law at 8-9.[1]

---

[1] The cases that Defendant cites for this proposition are clearly distinguishable because they comprise situations where an independent arbitration, pursuant to a collective bargaining agreement, must approve a termination for misconduct.  *See, e.g.*, *Collins v. N.Y. City Transit Auth.*, 305 F.3d 113, 115-16, 118-19 (2d Cir. 2002) (giving weight to a binding arbitration

(continued...)

However, it is well-settled that unreviewed state-agency proceedings are not entitled to any preclusive or collateral estoppel effect in Title VII actions. *See Lawrence v. Thomson Learning, Inc.*, No. 1:05-CV-329, 2007 WL 1593270, *28 (N.D.N.Y. June 1, 2007) (finding that, "[b]ased upon clear Supreme Court and Second Circuit precedent, we agree with Defendant's assessment that since the ALJ's findings were never appealed through the state courts, no preclusive effect is possible" (citing *Univ. of Tennessee v. Elliott*, 478 U.S. [788,] 796 [(1986)]; *Raniola v. Bratton*, 243 F.3d 610, 624 (2d Cir. 2001))) (other citation omitted). The court in *Lawrence* found that the plaintiff's ability to carry her burden on her Title VII claim would rise and fall on its own merit and not based upon any prior, un-reviewed agency determination. *See id.* (rejecting the plaintiff's request that the court ignore NYSHRD's finding of no probable cause on discrimination claims but also draw an inference of racial discrimination because she was not denied unemployment benefits). Accordingly, the Court finds that the unreviewed state-agency decisions have no preclusive effect on Plaintiff's Title VII claims.

**B.    Title VII claims**

*1. Employment discrimination claim*

Title VII makes it "an 'unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's race.'" *Holcomb v. Iona College*, 521 F.3d 130,

---

[1](...continued)
adjudicating and approving termination of employee pursuant to a grievance procedure in a collective bargaining agreement, noting that employee was represented by the union, evidence was received, and a reasoned opinion was issued by "an undisputedly independent, neutral, and unbiased adjudicator that *had the power to prevent the termination* . . . . [as] highly probative of the absence of discriminatory intent") (emphasis added) (citations omitted)).

137 (2d Cir. 2008) (quoting 42 U.S.C. § 2000e-2(a)(1)). An unlawful employment practice exists so long as race is a motivating factor, even if it is not the only factor. *See id.* (quotation omitted). To assert a *prima facie* case of discrimination, a plaintiff must show that she (1) is a member of a protected class; (2) is qualified for the position; (3) suffered an adverse employment action; and (4) the action "occurred under circumstancing giving rise to an inference of discriminatory intent." *Id.* at 138 (citation omitted). If the plaintiff makes out a *prima facie* case, "the burden shifts to the defendant to articulate 'some legitimate, non-discriminatory reason' for its action." *Id.* (citation omitted). If the defendant articulates such a reason, the plaintiff no longer has a presumption from the *prima facie* case and bears "'[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff . . . [,]'" *id.* (citation omitted), by showing that the defendant's proffered reason is not worthy of credence or that the reason is mere pretext for a retaliatory action, *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).

Defendant does not appear to contest that Plaintiff has established a *prima facie* case of discrimination. Rather, Defendant argues that the undisputed facts show that it had a legitimate non-discriminatory reason for terminating Plaintiff's employment and that Plaintiff cannot meet her ultimate burden to show that this reason is a pretext for discrimination.[2]

Defendant asserts that Ms. Sabin terminated Plaintiff's employment for an incident of

---

[2] Defendant argues that the Court should strike Plaintiff's opposition for failing to authenticate evidence, citing unsworn affidavits, lacking citation to the record, and otherwise failing to comply with the rules. Although Plaintiff has not fully complied with the Court's rules regarding citations to the record, the Court notes that Plaintiff is appearing *pro se* and has verified the complaint and sworn to her statement of facts in the nature of an affidavit. Therefore, the Court denies Defendant's request to strike.

insubordination, which occurred on May 29, 2004.  *See* Defendant's Facts at ¶ 16 (citing Sabin Aff. ¶ 17; Perlman Aff. Exhibit C, Plaintiff's Responses to Requests for Admissions, at No. 12). On that day, a customer arrived for her scheduled appointment with Plaintiff.  *See* Defendant's Facts ¶ 12 (citing Sabin Aff. ¶ 12).  Shortly thereafter, another customer arrived claiming to have an appointment with Plaintiff at the same time.  *See id*.  The manager, Ms. Sabin, explained the situation to the customer and offered her a free service as compensation for having to wait.  *See id*. at ¶ 13 (citing Sabin Aff. ¶ 12).  Ms. Sabin planned to give Plaintiff credit for the service despite offering it at no charge.  *See id*.  The client was satisfied and left to go shopping while waiting.  *See id*.

Ms. Sabin approached Plaintiff to advise her of the arrangement, at which time the following conversation took place on the salon floor during business hours in front of customers:

> When Ms. Sabin approached the Plaintiff, Plaintiff told her that
> she was sick of all you "f[***]ing b[*****]s" asking her questions
> Shocked by the Plaintiff's outburst, Ms. Sabin asked "Are you
> swearing at me?"  Plaintiff responded that "I'm sick of this s[***]."
> Ms. Sabin informed Ms. Baxter that they would talk later.  Plaintiff
> retorted, "Yes, we will b[****]!"

*See* Defendant's Facts ¶¶ 14-15 (citing Sabin Aff., ¶¶ 12, 17; Sabin Aff., Exhibit B, Plaintiff's Corrective Action Record dated 5/29/04; Sabin Aff., Exhibit C, Reason for Dismissal Form dated June 4, 2004; Sarah Leddy Declaration ("Leddy Decl.") dated June 2, 2004, at ¶ 4 & Exhibit A).  The Court finds that, based on this version of what occurred, Defendant has produced a legitimate non-discriminatory reason for its decision to terminate Plaintiff.

However, Plaintiff presents a completely different version of her exchange with Ms. Sabin:

> so Chris came back to tell me, oh, she's gone back -- she ran out of

> here, she -- you know, she was telling me she was upset
>
> \* \* \*
>
> She come back three more times to ask me if I would be done with Casey before two-thirty. . . .
>
> \* \* \*
>
> That third time that she came is when I said to her that -- you know, this is -- the thing with the appointments are getting ridiculous, right.
>
> All of a sudden, she just blew up and she was like, so what, what are you trying to say that this is my fault, and I was -- and I'm like -- that's when I turned my back on her, okay.
>
> Then, that's when she said, oh, well, we're going to be talking about this later, and I said, yes, and we need to see if Mike will be available to talk too, okay.

*See* Unemployment Hearing Transcript ("Tr.") dated December 4, 2004, at 52-54. Plaintiff believes Ms. Sabin generated the report of swearing, etc. because she did not want Plaintiff to complain to Mike. *See id.* at 31. Given Plaintiff's allegations, the Court finds that, based on her version of the story, Plaintiff has raised an issue of material fact as to whether, during the May 29, 2004 incident, Plaintiff was insubordinate. Accordingly, the Court denies Defendant's motion for summary judgment on the employment discrimination claim.

### 2. Retaliation claim

To present a *prima facie* showing of retaliation under Title VII,

> a plaintiff must adduce "evidence sufficient to permit a rational trier of fact to find [1] that[] he engaged in protected participation or opposition under Title VII . . . , [2] that the employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the

>> protected activity and the adverse action, i.e., that a retaliatory
>> motive played a part in the adverse employment action."

*Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006) (quotation and other citations omitted). For purposes of the protected activity element, "the plaintiff need only 'have had a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII . . . .'" *Id.* at 210 (quotation omitted).

Plaintiff claims she was retaliated against for exercising her right to protected speech on two occasions: (1) her speaking with Management in 2002, at their request, regarding another stylist's complaint of racism; and (2) her asking Ms. Sabin to have Management present when they spoke after the May 29, 2004 incident.

As to the first occasion, which occurred in 2002, assuming it was a protected activity, the Court finds that it is too remote in time from the alleged retaliatory action to have a causal connection; and Plaintiff has provided no other evidence of a nexus between this interview and her termination. *Cf. Kessler*, 461 F.3d at 206, 210 (noting that close temporal proximity can establish such a nexus) (citations omitted).

As to Plaintiff's second asserted protected activity – asking to speak to Management – Plaintiff never alleged or provided evidence that she indicated that she was going to discuss racial discrimination with Management. Plaintiff asserts that, during their argument on May 29, 2004, she asked Ms. Sabin if her supervisor would be available to meet with her and Ms. Sabin. *See* Tr. at 53-54. At best, Plaintiff may have implied to Ms. Sabin that she was going to complain, but it is not clear whether she was going to complain about racial discrimination, whether she was going to complain about Ms. Sabin generally, or the May 29, 2004 incident specifically, without regard to race. Therefore, the Court finds that this request did not constitute

protected activity.

Accordingly, the Court finds that Plaintiff has not established a *prima facie* case of retaliation and grants Defendant's motion for summary judgment on the retaliation claim.

## C. State law claims

### *1. Intentional infliction of emotional distress*

Plaintiff asserts that she has a claim for intentional infliction of emotional distress ("IED") and a claim for defamation. Defendant did not address these causes of action in its motion, memorandum of law, or reply memorandum.

Under New York law,

> [t]o state a claim for the intentional infliction of emotional distress, Plaintiff must demonstrate that: "(1) defendant's conduct toward plaintiff was so outrageous and shocking that it exceeded all reasonable bounds of decency as measured by what the average member of the community would tolerate; (2) plaintiff suffered severe emotional distress; (3) defendant's conduct caused such distress; and (4) defendant acted either (a) with the desire to cause such distress to plaintiff, (b) under circumstances known to defendant which made it substantially certain that that result would follow, or (c) recklessly and with utter disregard of the consequences."

*Fera v. City of Albany*, 568 F. Supp. 2d 248, 260 (N.D.N.Y. 2008) (quotation omitted). The Court finds that Plaintiff has failed to plead or show that Defendant's conduct caused her "severe emotional distress." Rather, Plaintiff pleads insomnia from financial difficulties – not the alleged discrimination. *See* Complaint at E(1)(b).4. Accordingly, the Court dismisses Plaintiff's IED claim for failure to state a claim.

Case 5:05-cv-00716-FJS-GHL    Document 27    Filed 02/13/09    Page 9 of 10

*2. Defamation*

> To state a claim for defamation under New York law, Plaintiff must establish: "(1) that a defamatory statement of fact was made concerning [Plaintiff]; (2) that the defendant published that statement to a third party; (3) that the statement was false; (4) that there exists some degree of fault; (5) and that there are special damages or that the statement is defamatory *per se*, i.e. it disparaged the plaintiff in the way of his or her office, profession or trade."

*Ello v. Singh*, 351 F. Supp. 2d 552, 575 (S.D.N.Y. 2007) (quotation omitted). Plaintiff appears to be asserting defamation on the basis that Ms. Sabin's allegedly false statements to the NYSDHR and the New York Unemployment Insurance Appeal Board damaged Plaintiff's professional reputation. *See* Compl. at E(1)(b).4; Plaintiff's Memorandum of Law at 6-7.

The Court notes that Ms. Sabin is not a Defendant in this action. Furthermore, to the extent that any such statements are attributable to Defendant and not merely to Ms. Sabin, statements to state agencies acting in a quasi-judicial capacity are entitled to absolute privilege under New York law. *See Allen v. St. Cabrini Nursing Home, Inc.*, No. 00 CIV 8558, 2001 WL 286788, *6 (S.D.N.Y. Mar. 9, 2001) (finding protected by absolute privilege statements that employers made to the EEOC and NYSDHR regarding discrimination and to the New York State Department of Labor regarding unemployment benefits) (citations omitted)). Accordingly, the Court dismisses Plaintiff's claim for defamation for failure to state a claim.

### IV. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendant's motion for summary judgment with respect to Plaintiff's

-9-

claims for retaliation, intentional infliction of emotional distress, and defamation is **GRANTED** and these claims are **DISMISSED** with prejudice; and the Court further

**ORDERS** that Defendant's motion for summary judgment is **DENIED** with respect to Plaintiff's Title VII claim for employment discrimination based on the termination of her employment; and the Court further

**ORDERS** that this case is referred to Magistrate Judge Lowe for the purposes of appointing trial counsel for Plaintiff, setting deadlines for the filing of pretrial submissions, and for placement of this case on the master trial calendar.

**IT IS SO ORDERED.**

Dated: February 13, 2009
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge